## In re HOVEY.

Court of Appeal, Second District; June 2, 1905.

81 Pac. 1019.

Attorneys—Admission to Bar.—The Finding of a Referee appointed to ascertain and report as to moral character of applicant for admission to the bar that the applicant was of good moral character prior to his arrival in the state, and that he was then guiltless of crime or improper conduct as an attorney, is conclusive.

Attorneys—Admission—Pendency of Disbarment Proceedings.— The failure of an attorney, in making application for admission to the

bar, to disclose to the court, and the attorney through whom his application is made, the pendency of disbarment proceedings against him in the state of his former domicile, does not materially affect his moral character or his admissibility to the bar.

Attorneys—Admission.—The Mere Fact of Pendency of Disbarment proceedings in the state of the former domicile of an applicant for admission to the bar does not disqualify him.

In the matter of the application of Frank W. Hovey for admission to the bar. Transferred from supreme court, ante, p. 202, 80 Pac. 234. Application granted.

SMITH, J.—This matter came before us under an order of the supreme court of the state of date March 6, 1905, which is as follows: "By the Court: Whereas, heretofore, at a session of this court held on June 17, 1904, Frank W. Hovey made application to this court for an order admitting him to practice as an attorney and counselor in all the courts of this state, and was thereupon duly examined by this court as to his qualifications, and upon said examination was by this court found qualified, and there being opposition to his said application for admission to practice, this court thereupon proceeded to make inquiry as to the good moral character of said Frank W. Hovey, and, to that end, made an order referring that question to Hon. M. T. Allen, judge of the superior court of Los Angeles county, as referee, to take testimony, and therefrom report to this court his findings concerning the character of said applicant, and said referee having thereafter made and filed in this court his report and finding in regard to the moral character of said applicant, and the matter having been thereupon continued for argument and determination upon said report; and whereas, there has been no hearing or determination thereon, and by an act approved February 15, 1905, it has been provided that power to make orders admitting persons to practice as attorneys and counselors in all the courts of this state is now lodged exclusively in the several district courts of appeal created by the amendment adopted November 8, 1904, to article 6 of the constitution: Now, therefore, it is ordered by this court that the aforesaid application of Frank W. Hovey be transferred to the district court of appeal for the second district for hearing and determination upon the report of said referee, and that the clerk of this court, when said district court of appeal is organized, do forthwith send

to said court all the papers on file in said proceeding, together with a copy of this order and all other orders made by this court therein.''

The report of the referee mentioned in the order is as follows:

''The undersigned, one of the superior judges of the state of California, in and for Los Angeles county, who was by your honorable court authorized and directed to take testimony and determine therefrom and to report as to the moral character of the applicant, would respectfully report that, after due notice to all parties interested, he gave a full and patient hearing touching all such matters as might be offered affecting the personal character of the applicant, and finds:

''That the applicant was born in the Dominion of Canada. That when a child his father removed with the family to the state of Maine. That the father, after his arrival in the state of Maine, exercised the right of franchise; claimed to be, and was recognized as, a citizen of the United States; represented to applicant, and applicant believed, that the father had been regularly and properly admitted to citizenship while the applicant was a minor under the age of eighteen years. That in truth the father never became a citizen of the United States. That applicant, assuming in good faith that he was a citizen, after he attained his majority was admitted to the bar of that state, was elected to and discharged the duties of various public offices of trust and profit, and had no information until shortly before April 14, 1902, of the fact that the father was not a citizen, at which date applicant made application to the proper court, and was admitted to citizenship. That in the early part of 1898, by reason of financial disasters, overwork, and because of the death of a favorite daughter, the applicant became and was for a long time insane. That he so far recovered his reason that in the latter part of that year he took up his residence at Biddeford, in the state of Maine, and in some degree the practice of his profession. That in spring of 1902 certain parties maliciously presented to the bar of York county (the same being the county in which Biddeford is situated) charges against the applicant, of unprofessional conduct, lack of good faith to clients, perjury, subornation of perjury, forgery, and extortion, which charges I find to have been untrue. A committee was appointed by the York

bar, which, acting in good faith, and believing these charges to have some foundation, on the 21st of April, 1902, formulated and presented to the justices of the supreme judicial court of York county, Maine, formal charges of such criminal and unprofessional acts, and on the 22d of April, 1902, filed the same in said court; and on the same day, said court issued a citation requiring the applicant to appear and show cause why he should not be removed from the office of attorney at law.

"The threat to file these charges, and their nature and character, was known by applicant for some weeks before the same were filed, and while he was still a resident of Biddeford. At this time, however, and for a long time prior, he was suffering physically, and was not strong mentally. Applicant's wife and her father, with a view of preventing the immediate filing of those charges, an investigation of which they felt assured would have the effect to occasion a return of previous insanity, retained as counsel for applicant, to prevent the filing of such charges, the lawyer who was their principal author in the first instance. This employment applicant acquiesced in, and advanced the money to pay this lawyer's fee of a hundred dollars, and was led to believe, not only by this lawyer, but by others, who were his friends, and interested in protecting his health and good name, that no charges would be formally presented; and thereupon applicant and his wife, shortly before the filing of such charges, left the state of Maine and went to the city of Boston, Massachusetts, that applicant might undergo a surgical operation. Shortly after this surgical operation was performed, and while applicant was weak physically, and in such condition of mind that, in my opinion, he was not capable of managing his affairs or protecting himself in anywise, the citation above referred to was served upon his brother, in the city of Boston; but the contents thereof, in a general way, were made known to him. Applicant's wife retained other counsel, by letter, to appear and resist such charges, and brought applicant to the state of California; intending to take up their residence in Eureka, in this state. Their route of travel carrying them through Los Angeles, they stopped off in this city about the 2d of May, 1902. The day subsequent to their arrival in Los Angeles, having letters of introduction to Judge Waldo M. York,

one of the superior judges of this county, applicant and his wife called upon Judge York, and the latter insisted that applicant should be admitted to the bar of Los Angeles county; and Judge York introduced a member of the bar to Mr. Hovey, and, upon the motion of said member of the bar, Judge York entered an order admitting him to practice. Judge York, being advised of applicant's intention to go to Eureka, advised applicant to stop on his way, and be admitted to the supreme court of the state, and, to that end, he gave him a letter of introduction to Shurtleff, a former partner of Judge York; and applicant did, upon his arrival in San Francisco, present such letter to Shurtleff, and, upon his motion, and upon production of his certificate theretofore issued by the supreme court of Maine, he was admitted to practice by your honorable court. I find that what might appear to be undue haste in relation to admission to practice should not be charged against applicant, in view of the insistence of those in whom he had confidence in relation thereto, and his weak mental and physical condition at the time. Your honors are familiar with all the proceedings leading up to and including the striking of applicant's name from the roster by your honorable court, and no further reference is necessary to be made thereto.

"Notwithstanding the employment by applicant of counsel in connection with the charges brought against him in the state of Maine, the attorneys who should have represented him permitted his default to be entered, and his name to be stricken from the rolls in the state of Maine. In 1903 applicant returned to the state of Maine, procured the order striking his name from the rolls to be vacated, and made complete and perfect arrangements, at a large expenditure, looking toward a defense against the charges so presented. After employing counsel and making such expenditure, and while applicant was present with his witnesses to refute and disprove the charges made against him, the bar association filed certain specifications in relation to such charges, and, among others, for the first time, presented the question of his alienage, which, being true and admitted, deprived the court in that state of jurisdiction to hear and determine the truth of the other charges; and on account of such alienage, and for no other reason, applicant's name was again stricken from the rolls of that state.

"Your honors are in possession of the record, which shows that on the 19th of October, 1903, applicant filed an answer in response to a petition for his disbarment in your honorable court, in which he denied under oath that he knew that such disbarment proceedings were pending in the supreme judicial court of Maine on the twelfth day of May, 1902, when he requested Shurtleff, an attorney, to move his admission to practice in your court, and in which answer he alleged that there had been withheld from him all information with respect to said charges. In view of the fact that the service of the citation was not personally made upon applicant, that he had been advised and believed that these charges would not be filed, and considering this weak mental condition, I find that he had no actual notice that the charges had been filed and were in fact pending at the time when in the answer he alleged such want of notice of filing; but I find that it is not true, as stated in that answer, that all information with relation to these charges and their character was withheld from him, but, on the contrary, that information as to their general nature and character was given him in the city of Boston shortly after the service of the citation upon the brother, and before his arrival in California. In addition, when called upon by the grievance committee of the bar association of Los Angeles county, early in 1903, to make explanation concerning these various charges, he was not frank and candid with such committee in his answers to their inquiries, and he did not state to Mr. Shurtleff or to your honorable court any fact in relation to the knowledge he did possess as to the threatened charges in the state of Maine. I further find that, pending the examination before your referee, certain of the testimony which applicant desired to submit to such referee was in the nature of affidavits; that, the bar committee being unwilling to permit such affidavits to be read, applicant caused questions and answers thereto (all, however, in perfect accord with such affidavits and written statements in his possession, signed by the parties whose depositions were intended to be taken) to be prepared here, and forwarded to the officers in Maine, that they might be read and subscribed by such witnesses. In each instance, however, such prepared questions and answers were accompanied by a letter of applicant, requesting them, if such answers were

not in accord with their remembrance, to make changes and interlineations so that they might conform to the truth.

"As a summary, then, your referee would report to your honorable court that upon arrival of applicant, Frank W. Hovey, in the state of California on the 1st of May, 1902, he was a man of good moral character; that he was guiltless of crime or improper conduct as an attorney prior thereto. His subsequent conduct in relation to the answer filed in your honorable court, his want of frankness with the attorney moving his admission, his want of frankness with the grievance committee of the Los Angeles bar, are matters which I deem purely within the province of your honorable court to consider, without recommendation or finding on my part as to their effect on his moral character and fitness.

"An apology is due for the length of this instrument. The great volume of testimony the long years through which the matter progressed, renders it impossible for me to present in a more brief way the facts elicited upon the hearing. I retain in my possession a transcript of the oral testimony offered, together with all exhibits, depositions, and papers, which, if desired by your honors, I will cause to be forwarded."

The report of the referee disposes of the charges against Mr. Hovey as to the matters occurring prior to his arrival in California on May 1, 1902, at which time, it is found, "he was a man of good moral character [and] . . . . was guiltless of crime or improper conduct as an attorney prior thereto." We have, therefore, to consider only the subsequent conduct of Mr. Hovey, as affecting the question of his moral character and his admissibility to the bar. This, as reported by the referee, was, in effect, that he did not disclose to the attorney moving his admission or to the court that proceedings for his disbarment were pending in the state of Maine, and that in his answer to the petition filed in the supreme court for his disbarment, which was verified, he denied that he knew that such disbarment proceedings were pending at the time of his application, and further alleged that all information of such proceedings had been withheld from him by his friends on account of the severe illness under which he was suffering at the time of the service of notice of the proceedings on his brother.

14

The force of these charges obviously depends upon the assumption that, at the times referred to, Mr. Hovey in fact did know of the pendency of the disbarment proceedings, and that this knowledge was then present to his mind. On this point the referee finds, in effect, that Mr. Hovey had been informed of the pendency and general nature of the proceedings in Boston shortly after the service of notice upon his brother, but that, on account of his physical and mental condition, this information was not present to his mind when he filed his answer. The latter finding, we gather from the report, was not based upon specific evidence as to the fact, but upon the physical and mental condition of Mr. Hovey, and the presumption of good character always existing until the contrary appears, which in this case was supported by the very high certificates of character given to him by lawyers, judges, and others in the state of Maine, attached to his answer; and, at all events, as the case is presented to us, the finding cannot be questioned. It may be added that it would be only in a clear case of conscious and intentional perjury that we would be justified in regarding the character of a defendant, especially in a criminal or quasi criminal proceeding, as affected by the denials and allegations of his answer.

With regard to the failure of Mr. Hovey to disclose to the attorney moving his admission to the bar and to the court that proceedings for his disbarment were pending in the state of Maine, though there is no express finding upon the point, it may be presumed that the same considerations will apply; otherwise, while we think Mr. Hovey would have done better to have disclosed the pendency of proceedings against him, we are not prepared to say that his failure to do so can be regarded as materially affecting his moral character or his admissibility to the bar. If the matter suppressed had been a conviction of gross misconduct, or, as in Case of Lowenthal, 61 Cal. 122, an actual disbarment, the case would be otherwise. But the mere fact of the pendency of proceedings against him would not have the effect of disqualifying him; nor would the court, perhaps, be justified in refusing his admission on account of the charges against him, without inquiry into and proof of the facts charged. In this case the order of disbarment which had been rendered by the Maine court at the time the peti-

tion for disbarment was filed in the supreme court here has been set aside, and the case finally disposed of, on grounds not affecting the character of Mr. Hovey, and without passing upon the charges made against him; nor in the present proceedings is any attempt made to establish the truth of those charges.

We do not think it necessary to consider the charge that Mr. Hovey was not frank and candid in his answers to questions put to him by the grievance committee, as, in view of the adverse relations of the parties, we do not deem it material.

We are of the opinion that Mr. Hovey is entitled to admission to the bar, and it will be so ordered.

We concur: Gray, P. J.; Allen, J.