## IN RE CASABLANCA, PETITIONER.

## PETITION for Admission to the Bar.—Motion for Reconsideration.

### Decided April 25, 1922.

ATTORNEYS — ADMISSION TO BAR — COMMITTEE ON CHARACTER — CERTIFICATE OF CHARACTER.—The general rule is that the Supreme Court relies upon the certificate of the Committee on Character to judge of the conduct of an applicant for admission to the bar, but in certain cases, notwithstanding a certificate of good character issued by the committee, the court may arrive at a different conclusion in the exercise of its own opinion after a proper investigation.

ID.—PARDON—DISBARMENT.—Although a person may have been pardoned for a crime, if the acts committed by him in that connection show that he is not fit to practice law the court may refuse to admit him. A pardon, the payment of a fine or serving a sentence may restore a person to his civil rights and may blot out the crime committed, but can not efface the act for whose commission he was convicted, and it is that act that the court must consider in a disbarment proceeding.

The facts are stated in the opinion.

The petitioner appeared *pro se*.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On November 15, 1921, this court made an order which reads as follows:

"Considering the circumstances of the case, the application of Justo A. Casablanca for admission to the bar must be denied."

Casablanca moved the court to reconsider its decision. His contention is that as the Committee on Character made a favorable report on his application, the court should admit him without further inquiry.

It appears from his personal record that after obtaining a diploma as attorney-at-law in the University of Porto Rico, Casablanca applied to this court for an examination in October of 1916 and failed to pass. In March of the year following he was again examined with the same result. In November of 1918 he finally passed the examination and a

request was made to the Committee on Character to report on his moral conduct.

In February of 1919 the Committee addressed the following report to the court:

"Now come the Committee on Character of applicants for admission to the practice of law and respectfully show:

"1st. That they have carefully considered the application of Justo A. Casablanca and from the documents exhibited therewith it appears that the said applicant was convicted of and served a sentence for a crime of forgery (felony) and thereafter obtained from the Governor of Porto Rico the restoration of his civil rights by means of a pardon which was also exhibited.

"2nd. That as provided by section 5 of the Act regulating admission to the bar of March 11, 1909, the applicant shall file with the Committee on Character a statement under his oath showing that he has never been convicted of any felony, and according to section 9 of that Act, the Supreme Court has discretional power to determine the scope and effect of the pardon granted.

"Therefore, we pray that in view of the documents exhibited and the provisions of the Act, the court will instruct this committee whether they should continue the investigation or dismiss the application finally."

On March 11, 1919, the court made an order which reads as follows:

"WHEREAS, although Justo A. Casablanca was convicted of and served a sentence for a crime of forgery, he was granted an absolute and unconditional pardon by the Governor of this Island, not only for the crime but also for the penalties which might have been imposed upon him by reason thereof under the law, restoring to him all of the rights and privileges formerly belonging to him.

"WHEREAS, in order to determine the legal effects of the said pardon in relation to admission to the practice of law it is expedient that the Committee on Character, considering not only the said facts of the sentence and pardon, but also such evidence as in their discretion they may require, should inform this court whether or not they regard the applicant as worthy of admission to the bar.

"THEREFORE, considering sections 5 and 9 of the law governing the matter, let the documents be returned to the Committee on

Character with instructions to continue the investigation and report to this court such conclusions as they may think proper."

The case was returned to the committee and while the investigation was being made the committee discovered that Casablanca had been convicted of another felony and had appealed from the judgment. The committee moved the court that the matter remain in abeyance until after the appeal should be disposed of and it was so ordered.

Some time passed. The appeal was dismissed. The committee resumed its work and finally sent to this Supreme Court a "certificate of good moral conduct" which reads as follows:

"The Committee on Character

"REPORT that the application of Justo Casablanca has been pending before this Committee for a long time and has been duly investigated.

"The doubts that the members of this Committee have had with regard to the reputation, conduct and moral character of this applicant for admission to practice before the insular courts have all arisen from and are connected with his conviction of two different felonies as a result of which he was sentenced to imprisonment.

"That after serving the said sentences the applicant was pardoned by the Governor of Porto Rico and restored to all of his civil and political rights.

"That, as above stated, the facts and circumstances that would cause a report adverse to the petitioner are related exclusively to the crimes for which he was convicted and thereafter pardoned. Considering the said sentences, our report would necessarily be adverse to the applicant. Excluding them from consideration, there is no other reason for refusing to give him the certificate applied for.

"We have entertained doubts and the opinions of the members of the Committee are not unanimous as to the effect and scope of the pardon granted the applicant by the Executive.

"A majority of this Committee are of the opinion that when an absolute and unconditional pardon is granted we have no right to take into consideration the crimes which resulted in the sentences for which the pardon was granted; that it is the purpose of the

law that the crime for which a pardon has been granted and which has been thereby effaced does not and can not preclude the person pardoned from holding any public office or exercising any function under the authority of any branch of the Government.

"Under this criterion and considering that the other reports regarding the petitioner's character are favorable, the Committee reports favorably on his application and a certificate is issued to him for the purposes of section 6 of the Act of March 11, 1909."

The court thereupon entered the order which is transcribed at the beginning of this opinion.

The first question to be considered is whether the court is bound by the certificate issued by the committee. In other words, is the court without power to judge for itself as to the conduct of the petitioner?

Corpus Juris, summing up the jurisprudence on the matter, says:

"As attorneys are officers of the court, the power to admit applicants to practice law is judicial and not legislative, and is vested in the courts only. This power to admit attorneys is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion. But notwithstanding the jurisdiction of the courts over the subject it has been generally conceded that the Legislature may, in the exercise of its police power, prescribe reasonable rules and regulations for admissions to the bar which will be followed by the courts. But the Legislature may not impose unreasonable rules or deprive the courts of their inherent power to prescribe other rules and conditions of admission to practice." 6 C. J. 571.

Good conduct is a necessary requisite for the admission of an attorney to the practice of the profession. In Porto Rico since 1909 a "Committee on Character" has been entrusted with the investigation of the conduct of applicants. See the Compilation of 1911, page 34. The law provided that if after a careful examination of the affidavits and such other evidence as may have been required, the committee

should be of the opinion that the applicant was a person of good moral character and worthy of being admitted to practice as an attorney, the said committee should issue to the applicant a certificate to that effect, and that the applicant should present the said certificate in the court to be filed before the administration of the oath.

The decisions are not uniform regarding the effect of the certificate. Some courts hold that the certificate is conclusive and that the court need not inquire further. *In re Hovey,* 7 Cal. Unrep. Cas. 203, 81 Pac. 1019; *In re Applicants for License,* 143 N. C. 1, 55 S. E. 635, 641, 10 L. R. A. (N. S.) 288, 10 Ann. Cas. 187, wherein Chief Justice Clark said:

"The general assembly having, whether intentionally or not, withdrawn from this court the duty to pass upon the moral character of applicants, having substituted therefore a certificate of character by two members of the bar, we are precluded from going into the charges against these two applicants. We are only empowered to certify that, having filed the certificate of character required by the statute, and certified that they are of legal age, they have thereupon been examined by us, and on such examination, have been found to possess a competent knowledge to practice law."

But the foregoing is not, in our opinion, the wisest rule. In their inquiry into the moral character of an applicant for admission to the bar the courts are not limited to the certificate presented by him, but will look beyond it and are bound to do so in cases attended by suspicious circumstances. So says Corpus Juris, relying upon the following authorities:

"In re Attorney's License, 21 N. J. L. 345; In re Application for License to Practice Law, 67 W. Va. 213, 221, 67 SE 597 (where Miller, J., said: 'We must construe the statute as intended to be in aid of the courts, and to leave this court, upon an application for license, and all the courts upon application for admission to practice, free to treat the order of the county court simply as *prima facie* evidence, and to institute any other and further inquiry into the moral character of the applicant deemed necessary. Otherwise

the act of the Legislature would have to be declared an encroachment on the judiciary, and void on constitutional grounds'). See also dis. op. Brown and Walker, JJ., In re Applicants for Attorney's License to Practice Law, 143 N. C. 1, 22, 55 SE 635, 10 LRANS 288. As is well said in that case by Judge Brown: 'The purpose of the act being to exclude men of bad character from the profession, it follows logically that the certificates of good character are merely a preliminary requisite before the applicant can be examined as to his legal acquirements. They make out a *prima facie* case, and, if uncontradicted, entitle the applicant to his license, if he passes the legal examination. The statute only prescribes what legal effect shall be given to a particular species of evidence if it stands alone and uncontradicted.' " 6 C. J. 574, note 86.

See also the case of *Claudio* v. *Ortiz*, 29 P. R. R. 404, 409.

By virtue of all the foregoing we are of the opinion that the Act of 1909 should be construed as creating the Committee on Character to aid the court in the investigation of the moral character of applicants for admission to the bar, but in no manner as destroying the faculty which this court has always had over the matter. The general rule is that the certificate of the committee is accepted and the applicant is granted or refused admission on the strength of it, but the court reserves its power to inquire into and judge for itself of the conduct of the applicant.

The first question raised being thus disposed of, we come at once to the merits of the case. The certificate in this case is not in the usual form. The attitude of the majority of the members of the committee is well explained. The committee concluded that it should issue the certificate of good character for the reasons therein stated. Therefore we are in a perfect position to judge for ourselves of the force of the certificate.

There is no doubt that Casablanca was sentenced in 1910 and 1917 for two different felonies, but it is maintained that

in both cases he was pardoned and that, therefore, the sentences can not now be considered for judging his conduct.

Nor are the decisions uniform on this point. Corpus Juris says:

"In a proceeding to disbar an attorney on the ground that he has been convicted of a crime, the fact that he may have been restored to his rights of citizenship by pardon, by serving out his term of imprisonment, or by the payment of a fine is not, in most jurisdictions, a defense to proceedings for disbarment; but there are decisions to the contrary." 6 C. J. 587.

As "decisions to the contrary" it cites *Sanborn* v. *Kimball*, 64 Me. 140, 150, and *Scott* v. *State*, 6 Tex. Civ. A. 343, and refers to the case of *In re Garland,* 4 Wall. (U. S.) 333, 380, but, in our opinion, and for the purpose of application to the present case, we think more weight must be given to the decisions which support the rule first enunciated, among which is *In re Garland, supra,* of the Supreme Court of the United States.

" 'While the effect of the pardon was to relieve him of the penal consequences of his act, it could not restore his character. It did not reinvest him with those qualities which are absolutely essential for an attorney at law to possess. It could not rehabilitate him in the trust and confidence of the court.' Nelson v. Com., 128 Ky. 779, 789, 109, SW 337, 33 KyL 143, 16 LRANS 272. To same effect Peo. v. Gilmore, 241 Ill. 569, 73 NE 737, 69 LRA 701; Peo. v. George, 186, Ill. 122, 57 N. E. 804.

" 'The pardon does reach the offense for which he (the attorney) was convicted, and does blot it out, so that he may not now be looked upon as guilty of it. But it can not wipe out the act that he did, which was adjudged an offense. It was done, and will remain a fact for all time. . . . . [A pardon] does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment. (In re Garland, 4 Wall. (U. S.) 333, 18 L. ed. 366; In re Deming, 10 Johns, (N. Y.) 232, 483) ; and it has been said that it does not restore the capacity for civil office. (Com. v. Fugate, 2 Leigh. (29 Va. 724). We do not, at this time, follow that case to that length.' Matter of ——, 86

N. Y. 563, 569. See also Fighmy v. Peo., 78 N. Y. 330; Baum v. Clause, 5 Hill (N. Y.) 196; United States v. Jones, 2 Wheel. Cr. (N. Y.) 451; Nicholas' Case, Fost. 64.'' 6 C. J. 587, note 36.

"Peo. v. Weeber, 26 Colo. 229, 231, 57 P. 1079 (where it was said: 'Pardon, or the payment of a fine, or service of sentence may restore one to his civil rights—may blot out the offense committed— but it can not wipe out the act of which he was adjudged guilty, and it is the act that the court considers in these disbarment proceedings').'' 6 C. J. 587–8, note 38.

It is true that Casablanca was pardoned. It is true that the sentences can not be invoked as such to refuse his admission. But leaving the sentences aside, the acts remain. What we must inquire into is the conduct of the applicant. This inquiry shows that Casablanca, at the age of twenty-three, forged a check and collected a sum of money which did not belong to him, and seven years later, after he had received an attorney's diploma, in an action of divorce against his wife he filed a summons from which it appeared that his wife had been served therewith when the truth was that no service had ever been made.

If the act first committed twelve years ago stood alone, we might say perhaps that the applicant's good conduct thereafter made him worthy of the honor of being admitted to practice law. But the applicant has quite recently relapsed and committed an act equally or still more serious, and that being the case, how is it possible for this court to allow now a man of such conduct to be invested with the robe of an attorney and authorized to defend the property, the life and the honor of his fellow-beings?

We do not mean to say that Casablanca is forever barred from the profession. Perhaps by repeated acts showing a permanent reformation he may satisfy this same court that he is qualified to be a member of the bar. But for the present to admit him would be a breach of our trust and of our own oaths.

In support of our attitude we will quote from the Act of 1909 creating the Committee on Character. The conclusion of section 9 thereof reads as follows:

"Upon a reversal of such conviction, or *pardon* by the President of the United States or by the Governor of Porto Rico, *the Supreme Court shall have power to vacate or modify* such order of disbarment." (Italics volunteered.)

The reconsideration must be denied.

*Motion overruled.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.