## IN RE CASABLANCA, PETICIONARIO.

Sobre admisión al ejercicio de la abogacía (reconsideración.)

### No. 2.—Resuelto en abril 25, 1922.

ABOGADO—ADMISIÓN AL EJERCICIO DE LA ABOGACÍA—COMISIÓN DE REPUTACIÓN—CERTIFICADO DE BUENA CONDUCTA.—La regla general es que el Tribunal Supremo descansa en el certificado expedido por la Comisión de Reputación para juzgar la conducta de los aspirantes al ejercicio de la abogacía, pero, en propios casos, no obstante haberse expedido por la comisión a un aspirante un certificado de buena conducta, el tribunal puede llegar a una conclusión contraria a virtud de su propia investigación y en el ejercicio de su propio criterio.

ID.—INDULTO.—No obstante haber sido indultado un abogado, si los actos por él realizados en conexión con el delito revelan que es incapaz para ejercer su profesión, el tribunal puede negarse a admitirlo. El indulto o el pago de una multa, o el cumplimiento de una sentencia pueden devolver al abogado sus derechos civiles, pueden borrar el delito cometido, pero no el acto de que fué declarado culpable y es el acto lo que la corte considera en un procedimiento de *disbarment*.

Los hechos están expresados en la opinión.

El peticionario compareció en nombre propio.

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

El 15 de noviembre de 1921 esta corte dictó una resolución que copiada a la letra dice así:

"Atendidas las circunstancias del caso, no ha lugar a admitir a Justo A. Casablanca al ejercicio de la profesión de abogado."

No conforme Casablanca, pidió al tribunal que reconsiderara su resolución. Se basa en que habiendo informado favorablemente la Comisión de Reputación su solicitud, la corte debe admitirlo sin más trámites.

Según consta de su expediente personal, Casablanca, habiendo obtenido el diploma de abogado en la Universidad de Puerto Rico, solicitó examen de reválida en octubre de 1916 y fué suspendido. En marzo del siguiente año volvió a examinarse con el mismo resultado. En noviembre de 1918 fué finalmente aprobado y se pidió a la Comisión de Reputación que informara con respecto a su conducta moral.

En febrero de 1919 la comisión se dirigió al tribunal por medio del siguiente informe:

"Comparece la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía y respetuosamente expone:

"1º. Que ha examinado detenidamente la solicitud del candidato Justo A. Casablanca y de los documentos que se acompañan resulta que el candidato mencionado fué convicto y cumplió condena por un delito de falsificación (*felony*), obteniendo luego del Gobernador de Puerto Rico la restitución de sus derechos civiles por medio de un perdón que también se acompaña.

"2º. Que según dispone la sección 5ª. de la ley sobre admisión al ejercicio de la abogacía de 11 de marzo de 1909 el aspirante debe acompañar con su solicitud una declaración jurada creditiva de no haber sido convicto de un delito grave (*felony*) y por la sección 9ª. de dicha ley esta Hon. Corte Suprema tiene facultad discrecional para fijar el alcance y efecto del perdón concedido.

"Por tanto, A la Corte Suplicamos: que con vista de los documentos acompañados y lo dispuesto en la ley instruya a esta Comisión si debe continuar la tramitación del expediente o archivarlo definitivamente."

Y el tribunal, el 11 de marzo de 1919, dictó una resolución que dice así:

"Por cuanto, si bien Justo A. Casablanca fué convicto y cumplió condena por delito de falsificación, se le concedió por el Gobernador de esta Isla completo e incondicional perdón no sólo del delito sino de las penalidades en que hubiera incurrido por razón del mismo en virtud de la ley, restituyéndole en todos sus derechos y privilegios, que anteriormente le correspondieron.

"Por cuanto, para apreciar los efectos legales del perdón expresado con relación a la práctica de la profesión de abogado, conviene que la Comisión de Reputación tomando en cuenta no sólo las circunstancias expresadas de condena y perdón sino las pruebas que tuviere a bien exigir, informe a esta corte si juzga o no digno al solicitante de ser admitido al ejercicio de la abogacía.

"Por tanto, vistas las secciones 5ª. y 9ª. de la ley sobre la materia, contéstese a la Comisión de Reputación, con devolución de los documentos remitidos, que continúe la tramitación del expediente y y dicte la resolución que estime procedente, la que comunicará a este tribunal.'

Volvió el caso a la comisión y cuando se hallaba practicando la investigación de ley, llegó a su conocimiento que Casablanca había sido convicto de otro delito grave y había apelado de la sentencia. La comisión pidió a la corte, y así lo decretó ésta, que el caso quedara pendiente mientras la apelación se decidía.

Pasó algún tiempo. La apelación fué declarada sin lugar. La comisión continuó su trabajo y por último envió a esta Corte Suprema una ''certificación de buena conducta moral'' que dice así:

''La Comisión de Reputación,

''INFORMA, que la solicitud del peticionario Justo Casablanca ha estado pendiente ante esta Comisión desde hace mucho tiempo y ha sido investigada debidamente.

''Las dudas que han tenido los miembros de esta comisión respecto a la reputación, conducta y condiciones morales de dicho candidato para ser admitido a ejercer ante los Tribunales Insulares, todas han nacido y se relacionan con la convicción de dicho candidato de dos distintos delitos graves como resultado de los cuales fué sentenciado a pena de prisión.

''Que después de cumplidas dichas sentencias el candidato ha sido indultado por el Gobernador de Puerto Rico y el peticionario restablecido a todos sus derechos civiles y políticos.

''Que como hemos dicho, los hechos y circunstancias que motivaran un informe desfavorable al peticionario, se relacionan exclusivamente con los delitos de los cuales fué declarado culpable y luego indultado. Tomando en cuenta dichas sentencias nuestro informe nécesariamente sería adverso al peticionario. Excluyéndolas de nuestra consideración no hay otro motivo para negar a expedirle el certificado que solicita.

''Hemos tenido dudas y existe discrepancia de opinión y de criterio entre los miembros de la comisión en cuanto al efecto y alcance del indulto del candidato por el Poder Ejecutivo.

''Una mayoría de esta comisión opina que una vez concedido un indulto completo y sin condiciones no tenemos derecho a tomar en cuenta para nada los delitos que motivaron las sentencias indultadas; que es el propósito de la ley que el delito perdonado y borrado mediante el indulto no constituye ni puede constituir obstáculo o

impedir que el indultado ocupara cualquier cargo público o ejerciera cualquier función que pueda autorizar cualquier rama del Gobierno.

"Bajo este criterio y en vista de que los demás informes respecto a la conducta del peticionario son favorables, procede informar favorablemente su petición y expedirle el certificado, a los efectos de lo dispuesto en la sección sexta de la ley de once de marzo de mil novecientos nueve."

La corte entonces dictó la resolución que transcribimos al principio.

La primera cuestión que debemos estudiar y resolver es ésta: ¿Está la corte obligada por el certificado expedido por la comisión? En otras palabras: ¿Carece de poder la corte para juzgar por sí misma la conducta del solicitante?

"Como los abogados," dice Corpus Juris resumiendo la jurisprudencia sobre la materia, "son funcionarios de la corte, la facultad de admitir aspirantes al ejercicio de la abogacía es judicial y no legislativa, y radica sólo en las cortes. Esta facultad de admitir abogados no es una arbitraria y despótica que pueda ejercitarse a gusto de la corte, o por pasión, prejuicio u hostilidad personal; sino que es el deber de la corte ejercitarla y regularla mediante una sana y justa discreción judicial. Pero a pesar de la jurisdicción de las cortes sobre la materia, se ha concedido generalmente que la Legislatura puede, en el ejercicio de su poder regulador (*police power*), prescribir reglas y reglamentos razonables para la admisión de abogados, los cuales serán seguidos por las cortes. Pero la Legislatura no puede imponer reglas irrazonables ni privar a las cortes de su facultad inherente para prescribir otras reglas y condiciones para la admisión a la abogacía." 6 C. J. 571.

La buena conducta es un requisito necesario para la admisión de un abogado al ejercicio de su profesión. En Puerto Rico, desde 1909, se encomendó a una "Comisión de Reputación" la investigación de la conducta de los aspirantes: véase la Compilación de 1911, pág. 36. La ley dispuso que si después de un examen cuidadoso de las declaraciones bajo juramento y demás pruebas que se hubieren requerido, la comisión opinase que el solicitante es persona de buena conducta moral y digna de ser admitida al ejercicio de la abo-

gacía, le expedirá un certificado al efecto, y que el solicitante presentará dicho certificado en la corte para su archivo antes. de prestar juramento.

La jurisprudencia no es uniforme sobre el efecto que debe darse al certificado. Hay cortes que sostienen que el certificado es concluyente y que la corte no tiene nada más que investigar. *In re Hovey,* 7 Cal. Unrep. Cas. 203, 81 P. 1019; *In re* Applicants for License, 143 N. C. 1, 19, 55 S. E. 635, 641, 10 L. R. A. (N. S.) 288, 10 Ann. Cas. 187, donde el Juez Presidente Clark dijo: "Habiendo la Asamblea General, ya intencionalmente o no, retirado a esta corte el deber de considerar la reputación moral de los aspirantes, y habiéndolo sustituído con un certificado de reputación expedido por dos miembros de la profesión, estamos impedidos de entrar a considerar los cargos contra estos dos aspirantes. Sólo tenemos poder para certificar que habiéndose radicado el certificado de reputación exigido por el estatuto, y habiéndose probado por certificación que ellos tienen la edad legal, ellos han sido examinados por nosotros, y mediante tal examen hemos encontrado que poseen un conocimiento suficiente para el ejercicio de la abogacía."

Pero la anterior no es, a nuestro juicio, la jurisprudencia más sabia. En su investigación sobre la reputación moral de un aspirante al ejercicio de la abogacía, las cortes no están limitadas al certificado presentado por aquél, sino que han de mirar detrás de él, y están obligadas a hacerlo así en casos donde existan circunstancias sospechosas, dice Corpus Juris, basándose en las siguientes autoridades: *"In re* Attorney's Licence, 21 N. J. L. 345; *In re* Application for License to Practice Law, 67 W. Va. 213, 221, 67 SE. 597 donde el Juez Miller dijo: 'Debemos interpretar el estatuto como que su propósito es ayudar a las cortes, y dejar a esta corte, en caso de una solicitud de licencia, y a todas las cortes en casos de solicitud de admisión a la abogacía, en libertad para considerar la orden de la corte del condado simple-

mente como prueba *prima facie,* y para practicar cualquiera otra investigación posterior que parezca necesaria sobre la reputación moral del solicitante. De otro modo el acto de la Legislatura tendría que ser considerado como una invasión de la judicatura, y nulo por fundamentos constitucionales.' Véase también la opinión disidente de los Jueces Brown y Walker, *In re* Applicants for Attorney's License to Practice Law, 143 N. C. 1, 22, 55 SE. 635, 10 L. R. A. (N. S.) 288. Como bien dice el Juez Brown en ese caso: 'Siendo el fin de la ley excluir de la profesión hombres de mala reputación, se deduce lógicamente que los certificados de buena reputación son meramente un requisito preliminar antes de que el aspirante pueda ser examinado sobre sus conocimientos legales. Constituyen un caso *prima facie,* y, de no ser controvertidos, dan derecho al aspirante a su licencia si pasa el examen legal. El estatuto sólo prescribe la fuerza legal que ha de darse a determinada clase de evidencia cuando exista por sí sola e incontrovertida.' " 6 C. J. 574, nota 86. Véase también el caso de *Claudio* v. *Ortiz,* 29 D. P. R. 435, 439.

A virtud de todo lo expuesto, creemos que la ley de 1909 debe interpretarse como creadora de un organismo—la Comisión de Reputación—auxiliar de la corte en la investigación de la conducta moral de los aspirantes al ejercicio de la abogacía, pero en modo alguno como destructora de la facultad que sobre tal extremo ha tenido siempre esta corte. Generalmente los certificados de la comisión son aceptados y basándose en ellos se admite o rechaza al solicitante, pero la corte conserva sus facultades para investigar y juzgar por sí misma la conducta del aspirante.

Decidida así la primera cuestión envuelta, surge en seguida la consideración de los méritos del caso. No se trata de un certificado corriente. La actitud de la mayoría de los miembros de la comisión está bien explicada. La comisión llegó a la conclusión de que debía expedir el certificado de

buena conducta, a virtud de las razones que en el mismo expresa. Así es que estamos en perfectas condiciones para juzgar por nosotros mismos la fuerza del certificado.

Es un hecho indiscutible que Casablanca fué condenado en 1910 y en 1917 por dos delitos graves, pero· se sostiene que en ambos casos fué indultado y que por lo tanto tales condenas no pueden tomarse en consideración ahora para juzgar su conducta.

Tampoco es uniforme en este extremo la jurisprudencia de los tribunales. Dice Corpus Juris: "En un procedimiento para separar a un abogado del ejercicio de su profesión bajo la base de que ha sido convicto de un crimen, el hecho de que haya sido restituído al goce de sus derechos de ciudadano mediante perdón, o el de que haya cumplido la sentencia o pagado la multa, no constituye, en muchas jurisdicciones, una defensa en los procedimientos de separación; pero hay decisiones que sostienen lo contrario." 6 C. J. 857.

Como "decisiones que sostienen lo contrario" se citan las de *Samborn* v. *Kinball,* 64 Me. 140, 150, y *Scott* v. *State,* 6 Tex. Civ. A. 343, y se hace referencia al caso de *In re Garland,* 4 Wall (U. S.) 333, 380, pero tienen más peso, a nuestro juicio, para aplicarlas a este caso que consideramos, las decisiones que sostienen la regla primeramente enunciada, entre las cuales se cita la misma de *In re Garland, supra,* de la Corte Suprema de los Estados Unidos.

" 'Aunque el efecto del indulto fué relevarlo de las consecuencias penales de su acto, ello no podía restaurar su reputación. Ello no le daba de nuevo aquellas cualidades que es absolutamente esencial que un abogado posea. Ello no podía rehabilitarlo en la confianza de la corte.' *Nelson* v. *Com.,* 128 Ky. 779, 789, 109 S. W. 337, 33 Ky. L. 143, 16 L. R. A. (N. S.) 272. A igual efecto son *Peo.* v. *Gilmore,* 214 Ill. 569, 73 N. E. 737, 69 L. R. A. 701; *Peo.* v. *George,* 186 Ill. 122, 57 N. E. 804.

" 'El indulto alcanza al delito del cual él (el abogado) fué convicto, y efectivamente lo borra de tal modo que no puede ser ahora considerado como culpable de él. Pero no puede borrar el acto que

cometió, que fué declarado un delito. Fué cometido, y continuará siendo un hecho en todo tiempo * * * (Un indulto) no devuelve el cargo confiscado, ni la propiedad o los intereses que hayan radicado en otras personas como resultado de la convicción y la sentencia. (*In re* Garland, 4 Wall. (U. S.) 333, 18 L. ed. 366; *In re* Deming, 10 Johns, (N. Y.) 232, 483; y se ha dicho que no devuelve la capacidad para ocupar un cargo civil. (*Com.* v. *Fugate,* 2 Leigh. (29 Va.) 724.) En esta época ya no seguimos esa decisión en todo su alcance.' Matter of——, 86 N. Y. 563, 569. Véase también *Eighmy* v. *Peo.,* 78 N. Y. 330; *Baum* v. *Clause,* 5 Hill N. Y. 196; *U. S.* v. *Jones,* 2 Wheel, Cr. (N. Y.) 451; Nicholas' Cases, Fost. 64.'' 6 C. J. 587, nota 36.

"*Peo.* v. *Weeber,* 26 Colo. 229, 231, 57 P. 1079 donde se dijo: 'El indulto, o el pago de una multa, o el cumplimiento de una sentencia puede devolver a uno sus derechos civiles—puede borrar el delito cometido—pero no puede borrar el acto de que él fué declarado culpable, y es el acto lo que la corte considera en estos procedimientos de *disbarment*'.'' 6 C. J. 587–8, nota 38.

Es cierto que Casablanca ha sido indultado. Es cierto que las condenas no pueden invocarse como tales para basar una negativa de admisión. Pero prescindiendo de las condenas, quedan los hechos. Es la conducta del solicitante la que debemos investigar. Y esa investigación demuestra que Casablanca a los veintitrés años de edad falsificó un cheque y cobró una suma que no le pertenecía y luego, siete años más tarde, cuando ya había recibido el diploma de abogado. en un pleito de divorcio seguido contra su esposa archivó un emplazamiento del que constaba que su esposa había sido notificada cuando lo cierto es que jamás lo había sido.

Si se tratara simplemente del primer hecho cometido hace doce años, podríamos tal vez decir que la conducta posterior del aspirante siendo buena lo hacía acreedor al honor de ser admitido al ejercicio de la abogacía. Pero el aspirante en fecha relativamente reciente reincide y realiza un hecho de igual naturaleza más grave todavía, y siendo ello así, ¿cómo es posible que esta corte permita, en los actuales momentos, que un hombre de tal conducta sea investido con

la toga del letrado y autorizado para ser el defensor de la propiedad, de la vida, del honor de sus semejantes?

No queremos decir que Casablanca esté para siempre impedido. Quizá a virtud de repetidos actos reveladores de una reforma sólida, pueda demostrar a esta misma corte que está en condiciones de ejercer la profesión de abogado. Pero, por ahora, sólo faltando al cumplimiento de nuestro deber y a nuestro propio juramento, podríamos aceptarlo.

En apoyo del criterio que hemos adoptado, citaremos, por último, la misma ley de 1909 creando la Comisión de Reputación. El final de la sección 9 dice así: "Al ser revocada dicha sentencia, o *mediante el perdón* del Presidente de los Estados Unidos o del Gobernador de Puerto Rico, *la Corte Suprema estará facultada para dejar sin efecto o modificar* la orden de suspensión (*disbarment*)." Las itálicas son nuestras.

No ha lugar a la reconsideración.

*Denegada la reconsideración.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey, Hutchison y Franco Soto.