Opinión disidente emitida por el
Juez Asociado Señor Estrella Martínez.
Ante el patente acto inconstitucional de la Asamblea Legislativa, este Tribunal debió anclar exclusivamente su decisión en una realidad constitucional sencilla: es el Poder Judicial el que tiene la facultad para regular o no cualquier variante de la colegiación de los abogados y abogadas, y tal función es judicial y no legislativa. Ante la adecuada adjudicación de esa prominente controversia, correspondía decretar la inconstitucionalidad de su faz de la totalidad de la Ley Núm. 109-2014, infra.
En consecuencia, no procedía dejar vigentes algunos artículos de la referida ley, como erróneamente dictaminó la mayoría de este Tribunal, cuando es evidente que éstos inciden directamente en nuestro Poder Judicial y por ser una materia ajena a la función legislativa. Asimismo, resultaba innecesario embarcarse en atender otras controversias adicionales, basadas en derechos individuales, pues la respuesta diáfana estaba anclada en la independencia judicial.
*875 I
El poder inherente que tiene este Tribunal para regular el quehacer de los abogados y abogadas, que son admitidos al ejercicio de la profesión jurídica en Puerto Rico, es reconocido y profesado por esta Curia desde comienzos del siglo pasado. Tan temprano como en 1908, se estableció que cuando un letrado faltaba al buen carácter moral necesario para ejercer la profesión, este Tribunal tenía la prerrogativa de separarlo del ejercicio de la abogacía. In re Abella, 14 DPR 748, 751 (1908).
Cónsono con esa realidad, este Tribunal ha sido consecuente en reiterar que “la facultad de admisión de aspirantes al ejercicio de la abogacía, es más de poder judicial que de ningún otro poder”. Boneta Ex parte, 39 DPR 154, 165 (1929). Véase, además, In re Casablanca, 30 DPR 399, 402 (1922). Asimismo, se ha expresado que
[...] si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que pretenden ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres. Boneta Ex parte, supra, págs. 165-166. Véase, además, Ex parte Jiménez, 55 DPR 54, 57 (1939).
A tenor con estos pronunciamientos, aun antes de la aprobación de la Carta Magna que actualmente rige nuestro ordenamiento jurídico, este Tribunal había sido enfático en delimitar que la admisión y exclusión de los abogados emanaba del poder judicial y no del ejercicio de un poder ministerial. Boneta Ex parte, supra. Véase, además, G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 (Núm. 4) Rev. Jur. UPR 729, 769 (1999).
*876 Este proceder fue validado mediante la aprobación de la Constitución de Puerto Rico en 1952. Allí, expresamente se estatuyó que el Poder Judicial recaería sobre el Tribunal Supremo, además de que se le facultó para adoptar reglas en torno a la administración de los tribunales. Art. V, Const. ELA, LPRA, Tomo 1. Por consiguiente, de esta manera se validó que es en esta Curia donde recae la responsabilidad de regular la profesión legal. Es a este Tribunal al que, en el ejercicio de su poder judicial, le corresponde determinar los parámetros según los cuales se regirán los letrados como funcionarios de esta Rama de Gobierno. En palabras del Prof. Guillermo Figueroa Prieto,
[flue la intención de los delegados a la Asamblea Constituyente proteger la independencia de la Rama Judicial, por lo que concederle a dicha rama de gobierno el control primario sobre la abogacía estaría en armonía con tal intención. Por lo tanto, con la aprobación de nuestra Constitución, quedó ratificada la acción que el Tribunal Supremo había iniciado a través de su jurisprudencia y que había tenido el efecto de apartarnos de las raíces históricas de la reglamentación de nuestra abogacía. Ello es así, puesto que el poder sobre la abogacía en España es atributivo legislativo y no judicial. (Escolio omitido y énfasis suplido). Figueroa Prieto, supra, pág. 771.
En consecuencia, con la aprobación de la Constitución, resulta inequívoco que este Tribunal tiene el poder para regular la profesión legal en Puerto Rico. Es con esta autoridad que esta Curia continúa reiterando el aludido poder y determina los parámetros para el ejercicio de la abogacía y la notaría. Véanse, a modo de ejemplo: In re Wolper et al., 189 DPR 292 (2013) (per curiam); In re Reichard Hernández, 180 DPR 604 (2011); In re Córdova Gónzalez, 135 DPR 260 (1994) (per curiam); In re Freytes Mont, 117 DPR 11 (1986) (per curiam); In re Liceaga, 82 DPR 252 (1961); In re Andréu Ribas, 81 DPR 90 (1959).
De igual forma, hemos expresado que “[n]uestro poder inherente para regular la profesión legal conlleva la enorme responsabilidad de velar porque los candidatos que *877 vayan a ejercer la profesión estén capacitados y sean aptos para cumplir fiel y cabalmente las serias responsabilidades que entraña la abogacía”. In re C.R.R., 144 DPR 365, 369 (1997) (per curiam). Además, se ha reconocido que “[l]a admisión al ejercicio de la abogacía es un asunto delicado, revestido de profundo interés público”. íd.
En armonía con nuestro deber y la alta responsabilidad que éste entraña, se instituyó un Reglamento para la Admisión de Aspirantes al Ejercicio de la Abogacía y la Notaría. Véase Junta Examinadora de Aspirantes al Ejercicio de la Abogacía y la Notaría, Reglamento para la Admisión de Aspirantes al Ejercicio de la Abogacía y la Notaría, aprobado en junio de 1998 y enmendado el 12 de agosto de 2013. Asimismo, se instauró un procedimiento disciplinario aplicable a las personas admitidas al ejercicio de la profesión legal en Puerto Rico. Véase Regla 14 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. A tenor con los cánones del Código de Ética Profesional, 4 LPRAAp. IX, este Tribunal también estableció los parámetros de conducta que las personas admitidas deberán profesar en aras de mantenerse ejerciendo la profesión.(1)
Todo esto en virtud del poder que nos fue constitucionalmente cedido y mediante el cual tenemos el deber ineludible de regular la profesión legal. Por consiguiente, a la luz de nuestro poder inherente, hemos establecido los procedimientos adecuados para descargar nuestra responsabilidad. De esta manera, además de ejercer nuestro Poder Judicial, salvaguardamos tanto la independencia, como la dignidad y la autoridad que le han sido concedidas a la Rama Judicial en estos aspectos.
Sin duda, esta independencia judicial es un corolario de la doctrina de separación de poderes que rige nuestro *878 ordenamiento. Es norma ampliamente conocida que nuestro sistema republicano de gobierno está sustentado en una división tripartita de poderes entre la rama ejecutiva, legislativa y judicial. Véase Art. 1, Sec. 2, Const. ELA, supra, ed. 2008, pág. 271. Es a partir de estas distinciones que se reconoce la doctrina de separación de poderes como un “principio [que] persigue salvaguardar la independencia de cada rama del Gobierno y proteger la libertad de los individuos frente a una peligrosa acumulación de poder en una sola rama”. Clases A, B y C v. PRTC, 183 DPR 666, 681 (2011). Véase, además, Colón Cortés v. Pesquera, 150 DPR 724, 750 (2000).
Nótese que el principio de separación de poderes es multidimensional. En esencia, protege la independencia de cada Rama de Gobierno en asuntos que son de su exclusiva jurisdicción. Además, establece un sistema de pesos y contrapesos cuando median funciones compartidas entre las ramas y, finalmente, protege a los ciudadanos de la acumulación indebida de poder en una de estas ramas. Mediante este principio se definen cuáles son los contornos de los poderes de las Ramas de Gobierno, de manera que se pueda “ ‘promover el más eficiente funcionamiento del sistema’ ”. Clases A, B y C v. PRTC, supra, pág. 681.
Ante ello, la doctrina delimita que la separación de poderes no implica que las Ramas de Gobierno operan en el vacío, completamente alejadas unas de las otras. Banco Popular, Liquidador v. Corte, 63 DPR 66, 71 (1944).(2) Por el contrario, al adoptar este sistema republicano de gobierno, lo que se pretendió evitar fue que una de las ramas se excediera del balance que debe existir durante su interacción, y el poder se concentrara en una sola de las tres esferas. Id., pág. 72. Por ende, es imprescindible “que cada una acepte y respete la autoridad de las otras y entienda la *879 interrelación de sus funciones”. Silva v. Hernández Agosto, 118 DPR 45, 57 (1986).
En palabras de don Raúl Serrano Geyls, lo que subyace es delimitar “¿quién tiene el poder para qué?”. (Énfasis suplido). R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, Puerto Rico, Ramallo Bros. Printing, 1986, Vol. I, pág. 571. Véase, además, Clases A, By C v. PRTC, supra. Es decir, en este caso, corresponde contestar la interrogante siguiente: ¿quién tiene el poder para regular o no cualquier variante de la colegiación de los abogados y las abogadas en nuestro ordenamiento jurídico? De la discusión que antecede, es evidente que esta función le compete exclusivamente al Poder Judicial. No contestar tajantemente esta pregunta implicaría claudicar a la defensa de la independencia judicial y, peor aún, dejar al arbitrio de las ramas políticas la intromisión en un componente esencial de la regulación de la práctica de la abogacía.
Es por ello que no compete a la Asamblea Legislativa inmiscuirse en ninguna de las materias contenidas en la ley bajo examen. Ante ese cuadro, no nos encontramos ante una típica situación del balance que requiere el proceso de interacción entre algunas de las Ramas de Gobierno. Por el contrario, en este escenario, la Asamblea Legislativa inter-vino flagrantemente con la independencia de la Rama Judicial y sus funciones constitucionales, lo cual es un componente ínsito de la separación de poderes. In re Solicitud Cepeda García, 130 DPR 18, 23 (1992) (per curiam). Este proceder es simplemente impermisible.
Al aprobar la Ley Núm. 109-2014, sin duda, la Asamblea Legislativa se inmiscuyó con nuestra independencia judicial, en claro detrimento del principio de separación de poderes. Ello, debido a que además de imponer la colegiación obligatoria y el pago de una cuota anual como condición para poder ejercer la abogacía, mediante la aprobación de la referida ley específicamente se facultó al Colegio de Abogados y Abogadas de Puerto Rico (Colegio) para in *880 tervenir con este Tribunal en el proceso de implementación del Código de Ética Profesional que rige la conducta de los abogados admitidos a la profesión. Véase Art. 3 de la Ley Núm. 109-2014. En relación con este particular, también se le permitió investigar y recibir quejas de acuerdo al procedimiento establecido en la misma ley. Véase Art. 4 de la Ley Núm. 109-2014. Al mismo tiempo, se autorizó a que la Comisión de Ética del Colegio o el organismo para estos fines autorizado, promulgara un reglamento relativo a los derechos de las partes involucradas. Mediante el referido artículo, también se estableció que el informe emitido por el organismo investigador debía recibir el mismo trato que los presentados, ante esta Curia, por la Oficina de la Procuradora General y la Administración de los Tribunales al momento de presentarse una querella contra un letrado, íd. Así, las ramas políticas se interpusieron con nuestro poder de reglamentar los procesos disciplinarios contra los abogados y abogadas admitidos a la profesión legal.
En consecuencia, por el contenido de estas disposiciones, no nos encontramos ante la situación que requeriría examinar si se ha lacerado el balance de los pesos y contrapesos que debe existir entre las Ramas de Gobierno por tratarse de una legislación que regula una materia ajena a la función legislativa. Ello, debido a que los abogados son funcionarios del Tribunal y la función de regulación que persigue la ley impugnada le compete solamente al Poder Judicial. Permitir la intromisión de la Asamblea Legislativa en estos asuntos o entrar a dilucidar si su actuación puede ser considerada como directiva es improcedente. Resulta evidente que tal proceder lacera la separación de poderes que sustenta nuestro sistema de gobierno en tanto atenta contra la independencia de esta Rama. Tal como expresamos en Colón Cortés v. Pesquera, supra, pág. 752, “la doctrina de separación de poderes significa que la función judicial só lo puede ser llevada a cabo por la Rama Judicial, y de la misma manera, que labores no judiciales *881 deben ser dejadas para la correspondiente actuación de las otras ramas”. (Citas omitidas).
En fin, como es sabido, una ley se presume constitucional hasta tanto se resuelva lo contrario. Aut. Carreteras v. 8,554.741 m/c I, 172 DPR 278, 298 (2007). Por ello, al ejercer nuestra facultad revisora debemos auscultar si existe alguna interpretación razonable del estatuto impugnado. Es decir, debemos estar “conscientes de la deferencia exigida al ejercicio del Poder Legislativo según el mandato constitucional, conforme con los roles adscritos a cada una de las ramas gubernamentales según el esquema de separación de poderes”. (Énfasis suplido). E.L.A. v. Northwestern Selecta, 185 DPR 40, 71 (2012). Véanse, además: Rexach v. Ramírez, 162 DPR 130, 149 (2004); Nogueras v. Hernández Colón, 127 DPR 405, 412 (1990). No obstante, una ley puede ser declarada inconstitucional tanto de su faz como en su aplicación. E.L.A. v. Northwestern Selecta, supra, pág. 71. En el primer caso, debemos evaluar si el vicio surge de la propia ley, mientras que en el segundo debemos auscultar el contexto en el que la medida impugnada fue empleada. íd., págs. 71-72.
Ante esta normativa, abordamos la legislación en controversia y nos es forzoso concluir que su totalidad es inconstitucional de su faz. Como hemos descrito, la legislación aprobada condiciona la práctica de la abogacía a la colegiación obligatoria e incluye disposiciones que inciden en el procedimiento disciplinario que ha empleado esta Curia para, en el ejercicio de sus funciones judiciales, regular la profesión legal. Aun cuando intentáramos ser deferentes con la Asamblea Legislativa, su actuación incide directa y desmedidamente con la función judicial de regular la profesión de la abogacía. Es decir, por tratarse de una acción patentemente inconstitucional que pretende regular una materia que compete al Poder Judicial, no procede respetar la voluntad legislativa bajo examen, ni mucho menos, *882 adscribirle visos de legalidad considerándola como una legislación directiva.
HH H
Los planteamientos aquí vertidos me obligan a disentir por ser la totalidad de la Ley Núm. 109-2014 inconstitucional de su faz. Nuestra Constitución no nos permite avalar el proceder de la Asamblea Legislativa al intentar acaparar una profesión que se encuentra regulada por el Poder Judicial. Como hemos expuesto, esta actuación resulta violatoria de prominentes principios constitucionales que rigen nuestro ordenamiento jurídico.

 Cónsono con estas medidas reguladoras, también se implemento el Programa de Educación Jurídica Continua, cuya misión es el “mejoramiento académico de toda persona que ejerce la profesión del Derecho”. Tribunal Supremo de Puerto Rico, Reglamento del Programa de Educación Jurídica Continua, aprobado el 8 de abril de 2005, según enmendado.

 Véanse, además: Misión Ind. P.R. v. J.P., 146 DPR 64, 81 (1998); Noriega v. Hernández Colón, 135 DPR 406 (1994).